YOUNG, J.
Plaintiffs, property owners in the city of Saginaw, brought suit to challenge the validity of two city ordinances that ban the discharge of firearms and the discharge of arrows by bows within city limits. Plaintiffs claim that, because neither ordinance contains a hunting exception, the ordinances conflict with and are preempted by MCL 324.41901, a statute that gives the Michigan Department of Natural Resources (DNR) the authority to regulate and prohibit the discharge of firearms and bows under certain circumstances.
*351 However, because plaintiffs have not made the requisite showing that their property is a hunting area “established under” part 419 of the Natural Resources and Environmental Protection Act, MCL 324.41901 et seq., there is no need to determine whether defendants’ ordinances are preempted by the statute. Moreover, the administrative rule promulgated by the DNR to administer part 419, Mich Admin Code, R 299.3048, pertains only to townships, not cities such as defendant city of Saginaw. We therefore affirm the judgment of the Court of Appeals, although for different reasons.* [1]
I. FACTS AND PROCEDURAL HISTORY
Plaintiffs own a 56-acre parcel of property located in the city of Saginaw. Plaintiffs claim that the property has been used for hunting for many years.
In 1999, defendant city of Saginaw enacted Saginaw Ordinances, title IX, § 130.03(D), which prohibits the discharge of firearms within the city.[2] The ordinance *352 contains four exceptions, but does not provide an exception for hunting. Subsequently, in 2002, defendant enacted Saginaw Ordinances, title IX, § 130.02, which prohibits the discharge of many types of projectiles, including arrows “by use of any bow ... .”[3] This ordinance contains no exceptions.
In 2003, plaintiff Michael Czymbor sought a hunting permit from the DNR. However, according to plaintiffs’ affidavit, the DNR denied plaintiff a hunting permit because the DNR “understood that hunting was not allowed” on plaintiffs’ property as a result of defendants’ ordinances. The DNR further indicated to plaintiff that it would issue hunting permits in the future if the city ordinances are repealed and “hunting is restored to the property.”
Plaintiffs filed an action for a declaratory judgment and a motion for a temporary restraining order, challenging the validity of the two ordinances because neither contained an exception for hunting. Plaintiffs claimed that the ordinances were invalid to the extent that they interfered with lawful hunting activity. Because the DNR was granted the authority to regulate or prohibit the discharge of hunting weapons under MCL 324.41901, plaintiffs argued that the statute preempted the ordinances.
Subsequently, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10), contending that the ordinances were enacted as a valid exercise of the city’s police power under the Home Rule City Act, MCL 117.1 et seq. Moreover, defendants claimed that § 41901 did not preempt the city ordi *353 nances because the regulation of the discharge of weapons was a subject area that was separate and distinct from the regulation of hunting. The trial court granted defendants’ motion for summary disposition, concluding that the statute did not preempt the local ordinances because the ordinances did not regulate the same area as the statute.
In a published opinion, the Court of Appeals affirmed the judgment of the lower court, holding that the city ordinances were not preempted by MCL 324.41901.[4] The panel noted that state law preempts a municipal ordinance where either a direct conflict exists between the enactments, or where the statute completely occupies the field that the ordinance attempts to regulate. Because no direct conflict existed, the panel analyzed the “field preemption” issue, concluding that the statute did not preempt the ordinances because “firearm control is a subject distinct from the field of hunting control” and that defendant city had authority as a home rule city to enact measures to assure public peace and safety.[5]
Plaintiffs sought leave to appeal in this Court, arguing that the city’s antidischarge ordinances were preempted by state law. This Court granted leave to appeal.[6] Subsequently, after oral argument, we directed the parties and amicus curiae DNR to file supplemental briefs.[7]
*354 II. STANDARD OF REVIEW
Resolution of the issue presented in this case involves the interpretation of MCL 324.41901. Statutory interpretation is a question of law that we review de novo.[8] ***8 Moreover, this Court reviews the decision to grant or deny summary disposition de novo.[9]
III. ANALYSIS
A. THE STATUTE
Part 419 of the Natural Resources and Environmental Protection Act, entitled “Hunting Area Control,” consists of five statutory provisions. The statute at issue, MCL 324.41901, provides, in relevant part:
(1) In addition to all of the department powers, in the interest of public safety and the general welfare, the department may regulate and prohibit hunting, and the discharge of firearms and bow and arrow, as provided in this part, on those areas established under this part where hunting or the discharge of firearms or bow and arrow may or is likely to kill, injure, or disturb persons who can reasonably be expected to be present in the areas or to destroy or damage buildings or personal property situated or customarily situated in the areas or will impair the general safety and welfare. In addition, the department may determine and define the boundaries of the areas. Areas or parts of areas may be closed throughout the year. The department, in furtherance of safety, may designate areas where hunting is permitted only by prescribed methods and weapons that are not inconsistent with law. When *355 ever the governing body of any political subdivision determines that the safety and well-being of persons or property are endangered by hunters or discharge of firearms or bow and arrows, by resolution it may request the department to recommend closure of the area as may be required to reheve the problem. [Emphasis added.]
The clear language of § 41901 grants the DNR the authority to “regulate and prohibit” the discharge of firearms and bows and arrows, but that authority is limited to “those areas established under this part....” (Emphasis added.) In this case, plaintiffs have made no showing that their property is an area “established under” part 419. Because plaintiffs have not made the requisite showing, there is no basis to conclude that the statute is applicable to plaintiffs’ property.
In their supplemental briefs, plaintiffs and the DNR maintain that plaintiffs’ property need not be “established” under part 419 because the DNR has the “exclusive authority to regulate the taking of game” under MCL 324.40113a(2), and that hunting on private land is generally permitted everywhere, subject to the permission of the landowner.[10] However, the issue before us today is not where hunting is permitted. Rather, the issue before us is the applicability of MCL 324.41901.* [11]
*356 The plain language of the statute requires that property be “established under” part 419 before the regulatory provisions of § 41901 apply. In other words, the DNR’s authority to regulate the discharge of weapons on property under § 41901, and any potential reciprocal limitation on the city of Saginaw’s ability to prohibit the discharge of weapons within its city limits, exists only to the extent that the subject property has been “established under” part 419. While the DNR enjoys “the exclusive authority to regulate the taking of game,” MCL 324.40113a(1), there is no indication that the legislative grant of authority to regulate the taking of game is superior to or supersedes the specific legislative grant of authority at issue here — the authority to regulate the discharge of weaponry.[12] In any event, the DNR cannot exceed the authority granted by the Legislature to regulate the discharge of weaponry under MCL 324.41901.[13] Moreover, while the DNR’s interpretation of the statute is given some measure of deference, its construction cannot conflict with the plain language of the statute,[14] which requires that property be “estab *357 lished under” part 419 before the regulatory provisions of § 41901 are applicable.[15]
Because plaintiffs have not shown that their property is “established under” part 419 of the Natural Resources and Environmental Protection Act, there is no basis to conclude that the statute is applicable, thus eliminating the need to decide whether defendants’ ordinances are preempted by MCL 324.41901.
B. THE ADMINISTRATIVE RULE
Additionally, while not discussed by the parties or the DNR, we also note that the current administrative rule promulgated by the DNR to administer part 419 applies to townships but not to cities such as defendant. Thus, even if plaintiffs could show that their property was “established under” part 419, which they cannot, the administrative mechanism currently in place would not apply.
Mich Admin Code, R 299.3048 provides:
(1) The hunter area control committee was created by section 1 of Act No. 159 of the Public Acts of 1967. It is composed of a representative of the department of natural resources, a representative of the department of state police, the township supervisor, and a representative of the sheriffs department of the counties involved.
(2) The committee selects a chairman from its members who serves for a year, then alternates with a member from another agency. The department of natural resources performs clerical, operational, and administrative duties of the *358 committee. Expenses incurred are borne by the member’s department. Costs of surveys and actions outside the committee and the sheriffs department are borne by the department of natural resources.
(3) In the interest of public safety and the general welfare, the committee may regulate and prohibit hunting and the discharge of firearms and bow and arrow on those areas where hunting or the discharge of firearms or bow and arrow may or is likely to kill, injure, or disturb persons who reasonably can be expected to be present in the areas or to destroy or damage buildings or personal property situated or customarily situated in such areas or will impair the general safety and welfare. The committee may determine and define the boundaries. Areas may be closed throughout the year or parts thereof. The committee, in furtherance of safety, may designate areas where hunting is permitted only by prescribed methods and weapons not inconsistent with law. [Emphasis added.]
While the administrative rule was originally promulgated to administer the predecessor statute to MCL 324.41901, there is no indication that the current rule does not remain in full effect.[16] Justice Weaver’s dissent claims that reading Rule 299.3048 according to its plain language is contrary to “a plain reading of part 419.” Post at 369. However, nothing in part 419 describes or requires any particular mechanism of implementation. Rather, a “plain reading of part 419” indicates that the mechanism of implementation is left to the discretion of the DNR. Here, it is clear that the DNR has chosen to administer MCL 324.41901 by means of Rule 299.3048.[17]
*359 IV CONCLUSION
The actions of the DNR throughout these proceedings have been, to say the least, contradictory. Initially, the DNR refused to issue hunting permits to Michael Czymbor solely because of the existence of defendants’ discharge ordinances. However, the DNR now claims that these same ordinances are invalid to the extent that they do not provide a hunting exception, because only the DNR may prohibit the discharge of weaponry in hunting areas under MCL 324.41901. Moreover, the department claims that areas need not be established under part 419, despite the clear language of MCL 324.41901, because its “exclusive authority to regulate the taking of game” under § 40113a(2) obviates the need to comply with the requirements of § 41901. Additionally, the DNR has failed to acknowledge the existence or effect of Rule 299.3048. Certainly, if the DNR no longer wishes to acquiesce to defendants’ antidischarge ordinance, it is free to take the necessary steps to amend its administrative rules to conform to the view it urges in its briefs. It may not, however, simply ignore the language of MCL 324.41901 or the requirements of the Administrative Procedures Act.[18]
*360 The judgment of the Court of Appeals granting summary disposition to defendants is affirmed, although for an alternative rationale.
Taylor, C.J., and Corrigan and Markman, JJ., concurred with Young, J.

 In affirming the judgment of the Court of Appeals, we do not address and take no position on the Court of Appeals preemption analysis.

 The ordinance provides:
(1) Discharge Prohibited. It shall be unlawful for any person to discharge a firearm in the City.
(2) Exceptions. It shall not be a violation of this section to discharge a firearm under the following conditions:
(a) In the protection of life;
(b) Law enforcement officers in the performance of their duties;
(c) An established and lawfully permitted educational program properly supervised;
(d) Military functions, such as parades, funerals, firing blank charges.

 The ordinance provides that “[n]o person shall discharge or propel any arrow, metal ball, pellet or other projectile by use of any bow, long bow, cross bow, slingshot or similar device within the City limits.”

 Czymbor’s Timber, Inc v City of Saginaw, 269 Mich App 551; 711 NW2d 442 (2006).

 Id. at 559.

 475 Mich 909 (2006).

 477 Mich 1277 (2007). Specifically, we directed the parties and amicus curiae to address "(1) whether privately owned land is generally open for hunting with the permission of the owner unless a local government has taken steps to close the land and, if so, what, if any, other procedures exist in addition to MCL 324.41901 to allow a local government to close land to *354 hunting; or (2) whether, instead, privately owned land must first be established as a hunting area before hunting is allowed and, if so, what are the current statutory and regulatory procedures for establishing hunting areas.”

 Reed v Yackell, 473 Mich 520, 528; 703 NW2d 1 (2005).

 Cameron v Auto Club Ins Ass’n, 476 Mich 55, 60; 718 NW2d 784 (2006).

 The other hunting limitation identified by the DNR can be found at MCL 324.40111(4), which prohibits hunting or discharging a weapon within 150 yards of an occupied building without first obtaining the written permission of the landowner. A violation of MCL 324.40111(4) is a misdemeanor. MCL 324.40118.

 Justice Weaver’s dissenting opinion claims that the plain language of MCL 324.41901 “explicitly authorizes the DNR to determine and define the boundaries of hunting areas in Michigan.” Post at 362-363.
However, MCL 324.41901(1), which is substantively identical to its predecessor statute, MCL 317.332, merely states that “[i]n addition, the department may determine and define the boundaries of the areas.” Read in context, the statute indicates that, in addition to regulating and prohibiting hunting and firearms “where hunting or the discharge of *356 firearms or bow and arrow may or is likely to killthe department may also define the boundaries of the areas. Thus, the sentence at issue in § 41901 indicates that that DNR may “determine and define the boundaries of the areas” where hunting has been restricted, and does not address where hunting is permitted.

 In fact, the first phrase in MCL 324.41901(1), stating that the authority to regulate the discharge of weaponry is “[i]n addition to all of the department powers,” (emphasis added) indicates that this authority is coequal, rather than inferior, to the DNR’s authority to regulate the taking of game.

 Blank v Dep’t of Corrections, 462 Mich 103; 611 NW2d 530 (2000); York v Detroit (After Remand), 438 Mich 744; 475 NW2d 346 (1991); Coffman v State Bd of Examiners in Optometry, 331 Mich 582; 50 NW2d 322 (1951).

 Catalina Marketing Sales Corp v Dep’t of Treasury, 470 Mich 13; 678 NW2d 619 (2004); Ludington Service Corp v Acting Comm’r of Ins, 444 Mich 481; 511 NW2d 661 (1994).

 In dissent, Justice Weaver opines that plaintiffs’ property is “established under” part 419 because “Saginaw County, in which plaintiffs’ land is located, is mentioned multiple times” in the Wildlife Conservation Order (WCO). Post at 364. The WCO can he found at <http://www.michigan.gov/documents/Wcao_134367_7.html> (accessed May 2, 2007). However, nothing in the WCO references, much less purports to establish areas under MCL 324.41901 et seq.

 See MCL 324.105; MCL 324.41902(3). Of course, if the DNR no longer believes that the administrative rule “adequately coverts] the matter,” then the DNR is encouraged to promulgate new rules in conformance with the Administrative Procedures Act, MCL 24.201 et seq.

 It should also be noted that each and every hunting restriction promulgated under part 419 involves only townships, and does not *359 involve a single city or village. See Local Hunting and Firearms Controls, Mich Admin Code, R 317.101.1 through 317.182.12. The last time a local hunting control was implemented was in Brownstown Township in 2004. See Department of Natural Resources, Hunter Safety Section, Local Hunting Area Controls, HC-82-04-001.

 The Administrative Procedures Act requires an agency to give notice of proposed rules or rule changes, to hold a public hearing, and to submit the proposed rules or rule changes to the Legislature’s Joint Committee on Administrative Rules for review. MCL 24.241 through 24.246. If the committee objects to a proposed rule, both the Legislature and the Governor must approve legislation repealing or delaying the effective date of the rule. MCL 24.245a.